### In re HURLEY.

(District Court, D. Minnesota, Third Division. April 5, 1913.)

1. BANKRUPTCY (§ 67*)—PERSON SUBJECT TO ADJUDICATION—"WAGE-EARNERS."

Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 (U. S. Comp. St. 1901, p. 3418), exempts wage-earners, and section 1, subsec. 27, provides that "wage-earner" shall mean an individual who works for wages, salary, or hire, at a rate of compensation not exceeding $1,500 a year. *Held,* that where an alleged bankrupt was employed as a traveling salesman at the rate of $100 per month and board and lodging while traveling, and there was evidence that his employer's agreement to pay his traveling expenses was worth $40 a month to him, his compensation exceeded $1,500 a year, and he was therefore not exempt as a wage-earner.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 17, 18, 86, 87; Dec. Dig. § 67.*

For other definitions, see Words and Phrases, vol. 8, p. 7365.]

2. BANKRUPTCY (§ 14*)—JURISDICTION—DOMICILE—EVIDENCE.

An alleged bankrupt admitted that his residence was in St. Paul, Minn., until January 13, 1912, which lacked 13 days of being the greater part of six months preceding the filing of the bankruptcy petition in that district, but claimed he had changed his residence to Texas before January 26, 1912. He did not reach Texas until January 21st, and while he was actually within the state after that date, it appeared that the duration of his employment was uncertain, and that he was traveling with his wife in Texas in about the same manner he had previously traveled for the same employer through Kentucky and other states during the preceding year when he admitted that he retained his residence in St. Paul. *Held*, that his testimony that he intended to fix his residence in Texas as soon as he arrived there was not conclusive, and that the evidence did not show that he had changed his residence.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 20; Dec. Dig. § 14.*]

3. WITNESSES (§ 400*)—ADVERSE WITNESS—CONCLUSIVENESS OF TESTIMONY.

The fact that petitioning creditors in involuntary bankruptcy proceedings called the alleged bankrupt as a witness as to his residence, and he testified that he intended to change his residence from Minnesota to Texas as soon as he arrived there, did not preclude such creditors from showing the contrary.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 1268, 1269; Dec. Dig. § 400.*]

4. BANKRUPTCY (§ 67*)—PERSONS WHO MAY BE ADJUDGED—WAGE-EARNERS—CONTRACT OF EMPLOYMENT—TRAVELING EXPENSES.

A contract of employment by which the employé was to receive $100 a month and traveling expenses would not entitle him to any allowance for expenses while he was at home.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 17, 18, 86, 87; Dec. Dig. § 67.*]

5. BANKRUPTCY (§ 481*)—INVOLUNTARY PROCEEDING—ADJUDICATION—CONTEST—HEARING—FEES.

Under local bankruptcy rule 10, providing for the fees of a referee, his fees as special master, on the hearing of an issue raised on an involuntary petition as to whether the court had jurisdiction and whether the alleged bankrupt was subject to adjudication, could not exceed $10.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 886; Dec. Dig. § 481.*]

In Bankruptcy. In the matter of Joseph A. Hurley, alleged bankrupt. Adjudication granted.

Russell L. Moore, of St. Paul, Minn., for the bankrupt and another.
Walter L. Chapin and John M. Bradford, both of St. Paul, Minn., for the creditors.

WILLARD, District Judge. This case came on to be heard upon the report of the referee as special master upon the answer of the National Surety Company, the creditor sought to be preferred, and upon the special plea to the jurisdiction of the court by the bankrupt, Hurley. The National Surety Company answered that Hurley was a wage-earner at the time the petition was filed against him on April 25, 1912. The facts are stated in the report of the special master and need not be repeated. The salary which Hurley received was $100 a month and his traveling expenses. His employer did not

make him an allowance of a certain sum, but reimbursed him for such traveling expense as he incurred. This included his hotel bills or what he paid out for food and lodging.

[1] A "wage-earner" is defined by the Bankrupt Act, as follows:

"Section 1. (No. 27) 'Wage-earner' shall mean an individual who works for wages, salary, or hire, at a rate of compensation not exceeding one thousand five hundred dollars per year."

Hurley was employed by a company located at St. Louis, Mo. If that employer had agreed to pay him $100 a month, and to board and lodge him at St. Louis, and if it were proven that this board and lodging was worth to Hurley $40 a month, it must be clear that the compensation which he received by reason of his employment would be $140 a month. In the present instance he received this board and lodging while he was traveling. In a case where an employé maintained a household establishment at his place of residence, from which place of residence he traveled for his employer, it might be difficult to determine just what the board and lodging furnished him while he was so traveling would be worth to him, for the expenses of his household establishment would still go on during his absence. This difficulty is not presented here, for, in the first instance, Hurley maintained no household establishment in St. Paul; and, in the second place, both he and his wife testified from their experience that the agreement on the part of his employer to pay his traveling expenses was worth $40 a month to him. It thus appears that he was in fact at the time the petition was filed against him receiving compensation at the rate of $140 a month, or more than $1,500 a year, and was therefore not a wage-earner.

This defense of the National Surety Company cannot be maintained.

[2] Hurley's plea alleged that he had not had his residence or place of business within the district of Minnesota the greater part of six months preceding the filing of the petition against him. The facts relating to this matter are stated in the report of the special master, and need not be repeated here. The petition was filed, as has been said, on April 25, 1912. Hurley admitted that his residence was in St. Paul until January 13, 1912, which lacked 13 days of being the greater part of the six months preceding the filing of the petition. The question is whether he changed his residence to Texas before January 26, 1912. He did not reach that state until January 21, 1912. While he was actually within the state after that date, I do not think that the evidence shows that he did not intend to return to St. Paul. The duration of his employment was uncertain. He apparently was traveling in Texas with his wife in about the same manner as he had traveled for the same employer through Kentucky and other states during the preceding year, when he admittedly retained his residence in St. Paul. Although he says that he intended to fix his residence in Texas as soon as he arrived there, yet this statement by him is not conclusive.

[3] The fact that the petitioning creditors called Hurley as a witness did not preclude them from showing that the facts material to the controversy were different from what Hurley stated that they were.

The matter of his intention was a fact material to this inquiry. Upon that question his acts while in Texas are more important than his testimony given after this controversy arose, as to what his intention then was. By the terms of his contract of employment he was entitled only to his traveling expenses.

[4] That, of course, would entitle him to no allowance for expenses while he was at home. At the time the petition was filed against him he said that he lived in Houston, Tex. The testimony shows, however, that he charged his employer with his expenses for board and lodging while he was at Houston, and that such expenses were paid. This fact is entirely inconsistent with the idea that Houston was his residence, or that he was anything more than a traveler while he was there. His plea to the jurisdiction cannot be sustained.

[5] Under rule 10 the fees of the referee as special master upon this hearing cannot exceed $10.

It is therefore now here ordered that the answer of the National Surety Company and the plea of Hurley be overruled; that said Hurley be and hereby is adjudged a bankrupt; and that the case be referred to the proper referee for further proceedings in accordance with law.